UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIDGETTE DENISE WRIGHT,

      Plaintiff,

v.                                                                    Case No. 8:24-cv-2819-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

      Defendant.

---

## OPINION AND ORDER[2]

### I.  Status

Bridgette Denise Wright ("Plaintiff") is appealing the Commissioner of

the Social Security Administration's ("SSA('s)") final decision denying her claim

for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is

the result of "severe degenerative disc disease with spinal canal stenosis,

arthritis, neuropathy, fibromyalgia, auto immune disease, chronic migraines,

high blood pressure, low G6PD, gastroesophageal reflux disease and Poland

---

[1]    Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

syndrome," as well as "Lupus, neck and back problems" and pain. Transcript of Administrative Proceedings (Doc. No. 9), filed February 3, 2025, and Supplemental Transcript of Administrative Proceedings (Doc. No. 16-1[3]), filed April 1, 2025 (collectively, "Tr." or "administrative transcript") at 60, 70, 218, 253. Plaintiff protectively filed an application for DIB on May 14, 2021, alleging a disability onset date of October 16, 2020.[4] Tr. at 192-93. The application was denied initially, Tr. at 59, 60-67, 85-88, and upon reconsideration, Tr. at 69, 70-78, 96-99.

On April 11, 2023, an Administrative Law Judge ("ALJ") held a hearing,[5] during which Plaintiff's counsel appeared but she did not. See Tr. at 747-52. The hearing was rescheduled. Tr. at 751. On July 18, 2023, the ALJ held another hearing,[6] during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 34-58. On September 8, 2023, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-21.

---

[3]     Defendant sought and received permission from the Court to file this supplemental transcript. See Motion to Supplement Administrative Record (Doc. No. 16; "Motion"), filed April 1, 2025; Endorsed Order (Doc. No. 18), entered April 4, 2025. It consists of a six-page transcript of a hearing held on April 11, 2023 that was omitted from the originally-filed administrative transcript "[t]hrough oversight and error." Motion at 1.

[4]     Although actually completed on May 17, 2021, see Tr. at 192, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as May 14, 2021, see, e.g., Tr. at 60, 70.

[5]     The hearing was held via telephone. Tr. at 749.

[6]     The hearing was held via telephone with Plaintiff's consent. Tr. at 36, 110-11.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 187-88 (request for review). On October 21, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 6, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises as the issues whether the ALJ: 1) failed to properly evaluate Plaintiff's migraines according to Social Security Ruling [('SSR')] 19-4p resulting in error at step three and an incomplete residual functional capacity [('RFC')] assessment"; 2) "failed to properly evaluate Plaintiff's mental impairments under the Paragraph B criteria at step three"; 3) "improperly evaluated the medical source opinions"; and 4) "assessed a [RFC] consistent with and supported by the substantial evidence." Plaintiff's Brief (Doc. No. 13; "Pl.'s Br."), filed March 7, 2025, at 5, 9, 14, 18 (emphasis and some capitalization omitted). On April 3, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") [7] addressing the issues. After a thorough review of the entire record and

---

[7]    Defendant's Memorandum does not contain page numbers. Citations are to the pagination assigned by the Court's electronic filing system (CM/ECF).

consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 12-21. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful

---

[8]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

activity since October 16, 2020, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: Cervical and lumbar degenerative disc disease; spinal canal stenosis; radiculopathy; neuropathy; undifferentiated connective tissue disease; Poland syndrome; migraine headaches; rheumatoid arthritis; hypertension; chronic kidney disease; obesity, and adjustment disorder with anxiety." Tr. at 12 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b). She can never climb ladders, ropes, or scaffolds, never crawl, and frequently climb ramps and stairs, balance, stoop, kneel, and crouch. She can frequently handle. She must avoid concentrated exposure to noise, vibrations, and hazards. She can understand, remember, and carry out simple instructions. She can maintain attention, concentration, and pace for 2-hour increments in an 8-hour workday in a work environment where changes in the workplace are occasional and gradually introduced and with occasional interaction with coworkers, supervisors, and the general public.

Tr. at 14-15 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as two different types of

a "customer service representative." Tr. at 20 (citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 20-21. After considering Plaintiff's age ("48 years old, which is defined as younger individual age 18-49, on the alleged disability onset date" with a "subsequently changed age category to closely approaching advanced age"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 20 (emphasis and citations omitted), such as "Marker" and "Collator operator," Tr. at 21. The ALJ concluded Plaintiff "has not been under a disability . . . from October 16, 2020, through the date of th[e D]ecision." Tr. at 21 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

For ease of discussion, the undersigned addresses the medical source opinions and evidence (Plaintiff's issue three), followed by Plaintiff's contentions about the mental findings of the ALJ (Plaintiff's issue two), and finally, the migraines and general RFC contentions are addressed together (Plaintiff's issues one and four).

### A. Medical Source Opinions and Evidence

Plaintiff argues the ALJ erred in evaluating the opinion of treating physician's assistant Jasmine Siska, PA-C, as well as the prior administrative findings of two non-examining state-agency consultants, Moses Izuegbu, M.D.

- 7 -

and Steven Arkin, M.D. Pl.'s Br. at 14-18. According to Plaintiff, the ALJ "did not properly evaluate" Ms. Siska's opinion and the ALJ's analysis "demonstrates that she should have afforded it more weight than she did." Id. at 16. As for the state-agency opinions, Plaintiff argues the ALJ impermissibly relied on these opinions, which in turn relied on a fibromyalgia diagnosis that the ALJ did not find to be severe at step two and did not analyze pursuant to the applicable SSR (12-2p). Id. at 17-18. Plaintiff also posits that the opinions are infirm because the reconsideration opinion was "copied . . . verbatim" from the initial denial opinion. Id. at 17. Finally, Plaintiff points out that both non-examining physicians limited Plaintiff to "occasionally" crouching but the ALJ's assigned RFC allows for "frequent" crouching. Id.

Responding, Defendant argues the ALJ's analysis of all opinions at issue is adequate and supported by substantial evidence. Def.'s Mem. at 15-18. As to Ms. Siska's opinion, Defendant argues her treatment notes are "plainly unsupportive of the extreme limitations [Ms.] Siska assessed in her checkbox opinion." Id. at 17. As for the fibromyalgia issue, Defendant contends the ALJ "expressly considered Plaintiff's fibromyalgia as part of the RFC analysis." Id. at 18. As to the non-examining opinions, Defendant argues "similarities between the narrative explanations . . . are unsurprising because the record does not document any significant changes in Plaintiff's physical presentation." Id. at 17. Finally, regarding the crouching issue, Defendant argues the ALJ

found these opinions only "generally" persuasive, so she was not obligated to accept them verbatim; in any event, the jobs offered by the VE do not require any crouching, id. at 18, the implication being that any error in this regard would be harmless.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources").

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R.

§§ 404.1520c(a), 416.920c(a).[9] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same,

---

[9]    Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

[the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[10]

Here, Ms. Siska rendered an opinion on February 17, 2023 regarding Plaintiff's functioning that, if accepted, would result in a finding of disability. Tr. at 607-09. The ALJ found as follows regarding Ms. Siska's opinion:

> Physician Assistant Siska assessed [Plaintiff] with the following limits: Lift up to 10 pounds occasionally and no weight frequently; sit 1 hour out of an 8-hour day, 1 hour at one time; stand or walk 1 hour out of an 8 hour day, 1 hour at one time; bedrest during a normal workday for 3 to 4 hours; 15 minutes of rest for every 1 hour/minutes of work; lapses in concentration or memory daily for several hours a day; perform fine manipulation, typing, writing, and grasping small objects infrequently; and the need for chronic work related absences, 10 to 20 in any month. The limitations assessed by Physician Assistant Siska are not consistent with the clinical and objective findings contained in her own records, as discussed above at Exhibits 6F and 10F.
>
> A review of [Plaintiff's] treatment records with Physician Assistant Siska, approximately one month after this form was completed, shows [Plaintiff] has no physical disability and her activities of daily living were normal. On a review of symptoms, [Plaintiff] complained of back symptoms, ankle symptoms, muscle aches, pain localized to one or more joints, and limb swelling. She was on the medication Plaquenil/HCQ and a diuretic medication. [Plaintiff] said she saw her

---

[10] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

rheumatologist in February of 2023 and had her laboratory workup done. [Plaintiff] told Physician Assistant Siska that her C-reactive protein (CRP) was high, and her glomerular filtration rate (GFR) went back down. [Plaintiff] was described as not well appearing. She was oriented, well nourished, and in no acute distress. There was pain with range of motion of the wrists and hands. Grip strength was 4/5. At the cervical spine, there was severe tension, moderate tenderness to palpation, moderate pain/tightness with all range of motion especially with left rotation. At the lumbar spine, there was moderate tenderness to palpation, moderate pain with flexion, extension, and lateral bending and rotation. There was mild tenderness to palpation and pain with range of motion at the left elbow and left shoulder. There was tenderness at the bilateral ankles with pitting edema. Balance was normal. Gait and stance were normal. [Plaintiff] was prescribed a muscle relaxant and continued on the diuretic medication. Otherwise, [Plaintiff] was taking over the counter Tylenol for pain and migraines and an oral iron supplement. Overall, the treatment and clinical findings discussed above, do not paint a picture of an individual that requires bedrest nor all the other extreme functional limits assessed by Physician Assistant Siska. Considering the record as a whole, the undersigned is minimally persuaded by the assessment of Physician Assistant Siska.

Tr. at 17-18 (citations omitted). Regarding the opinions of the non-examining, state-agency consultants, see Tr. at 60-66 (Dr. Izuegbu), 72-76 (Dr. Arkin), the ALJ found:

[T]he undersigned is generally persuaded by the assessments of the State agency medical consultants, Moses Izuegbu, M.D., and Steven Arkin, M.D. After review of the record in September of 2021, Dr. Izuegbu opined [Plaintiff] can perform light level exertion with

- 12 -

some postural and environmental limits. Dr. Arkin later reviewed the file in October of 2022 and affirmed the assessment of Dr. Izuegbu. Of note, the State agency medical consultants are licensed physicians familiar with the evidentiary requirements of the Social Security Regulations and they provided detailed and persuasive rationales in support thereof, consistent with the objective findings discussed above at Exhibits 1F-15F. Moreover, the record contains no persuasive conflicting medical opinions nor does evidence received at the hearing level support greater exertional limits. Accordingly, the undersigned finds [Plaintiff] can perform a wide range of light level exertion. The undersigned has further provided for slightly greater postural limits as well as some manipulative limits, favorable to [Plaintiff's] allegations, as determined at Finding 5.

Tr. at 18 (citations omitted).

The ALJ did not commit reversible error in evaluating these opinions. As for Ms. Sitka, the ALJ reasonably concluded that her opinion for extremely limited functioning is inconsistent with and unsupported by her own notes. Tr at 17-18 (citations omitted); see Tr. at 383-454, 500-42, 581-87, 611-42, 708-15. As for Dr. Izuegbu and Dr. Arkin, the ALJ articulated adequate reasons, supported by substantial evidence, for finding their opinions generally persuasive. Tr. at 18 (citations omitted). Plaintiff's contention that these doctors relied on a fibromyalgia diagnosis that the ALJ did not recognize at step two or pursuant to the applicable SSR (12-2p) does not carry the day. For one, the ALJ did recognize a fibromyalgia diagnosis in the Decision. See Tr. at 15. But, more importantly, fibromyalgia is difficult to diagnose, and the records from

Plaintiff's treating providers reflect that difficulty—ultimately landing on a "working" diagnosis for Plaintiff's joint pain of "Sjogrens syndrome vs UCTD vs SLE" (believed to stand for Undifferentiated Connective Tissue Disease and Systemic Lupus Erythematosus, respectively). Tr. at 719. Thus, the ALJ did not unreasonably rely on the Dr. Izegbu and Dr. Arkin's opinions because of the evolving diagnosis. Moreover, the fact that Dr. Arkin affirmed Dr. Izegbu's opinion on reconsideration is not uncommon in disability appeals if supported by the evidence of record. Finally, although both opinions did provide that Plaintiff should only occasionally crouch, see Tr. at 65, 75, the ALJ's limitation to "frequent" crouching, Tr. at 14, can stand because she found these opinions to be only generally persuasive, see Tr. at 18. And, in any event, neither job identified by the VE requires crouching, so any error here is harmless. See DOT 209.587-034 (Marker), 1991 WL 671802; DOT 208.685-010 (Collator Operator), 1991 WL 671753.

### B. Mental Impairments at Step Three

Plaintiff argues the ALJ erred at step three in evaluating her mental impairments under the "paragraph B" criteria. Pl.'s Br. at 9-14. According to Plaintiff, "the ALJ's analysis is minimal, and only references a singular function report." Id. at 12. Responding, Defendant contends the ALJ's findings regarding the mental impairments are supported by substantial evidence. Def.'s Mem. at 13-14.

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

At issue are Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). Relevant here, to meet either Listing, Plaintiff had to show she had extreme limitation of one, or marked limitation of two, of the following broad areas of mental functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting and managing herself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B).

The ALJ assessed the broad areas of mental functioning set forth in the Regulations and 20 C.F.R. Part 404, Subpart P, Appendix 1, and found Plaintiff has mild restriction in understanding, remembering, or applying information; moderate restriction in interacting with others; moderate restriction in

concentrating, persisting, or maintaining pace; and moderate restriction in adapting or managing oneself. Tr. at 13-14. The ALJ found that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [L]istings 12.04 and 12.06." Tr. at 13.

The ALJ's findings are supported by substantial evidence. Plaintiff complains that the ALJ overly relied on her function reports, to the exclusion of medical evidence, in making the mental functioning findings. Pl.'s Br. at 12-14. While it is true that the ALJ mainly discussed and cited Plaintiff's function report in making the particular findings in the four broad areas of mental functioning, Tr. at 13-14, the ALJ sandwiched these findings with a discussion of the opinion evidence. First, the ALJ explained that "[n]o treating or examining medical source reported findings of [L]isting-level severity, nor did any State agency medical consultant determine that [Plaintiff's] impairments meet the criteria of any [L]isting." Tr. at 13. Second, following the broad functioning findings, the ALJ discussed in detail the state-agency psychological consultant's opinion. Tr. at 14. The ALJ did not err at step three.

### C. Migraine Headaches and RFC Generally

Plaintiff argues the ALJ erred in evaluating her migraine headaches and RFC in general. Pl.'s Br. at 5-9, 18-21. As for the migraines, Plaintiff contends the ALJ erred by failing to consider them pursuant to SSR 19-4p and Listing 11.02. Id. at 8. Plaintiff further contends the ALJ "did not include any functional

limitations related to Plaintiff's migraines in the RFC assessment." Id. at 9.
Regarding the RFC in general, Plaintiff argues the ALJ inappropriately relied
on her declining to have recommended surgeries or take recommended
medications, especially given her "severe adverse reactions" to certain
medications. Id. at 19-20. Plaintiff also contends the "RFC assessment fails to
account for the full scope of Plaintiff's impairments, the systemic nature of her
autoimmune disorder, and the extensive medical evidence documenting her
struggles." Id. at 21.

Responding, Defendant asserts that, despite the ALJ not explicitly citing
SSR 19-4p and Listing 11.02, the Decision reflects "that she appropriately
considered the relevant evidence" pursuant to the relevant legal standards.
Def.'s Mem. at 12. Moreover, as to the RFC limitations for migraines, Defendant
contends the ALJ did include functional limitations for them. Id. As for the RFC
in general, Defendant states that the ALJ "appropriately considered why
Plaintiff did not follow all prescribed treatment recommendations" and that the
ALJ "applied the correct legal standard and identified substantial evidence in
support of the RFC." Id. at 19, 20 (some emphasis omitted).

There is no Listing that applies directly to migraine headaches, but the
Administration "may find that a primary headache disorder, alone or in
combination with another impairment(s), medically equals a listing." Social
Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is

the most analogous listed impairment. <u>See</u> <u>id.</u> SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." <u>Id.</u> Paragraph B of Listing 11.02 requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the

- 18 -

need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).” SSR 19-4P, at *7.

Paragraph D of Listing 11.02 “requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.” SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. “To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in [Paragraph D, the Administration] consider[s] the same factors [it] consider[s] for [Paragraph B],” along with “whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.” SSR 19-4p, at *7.

If an individual’s “primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, [the Administration] assess[es] the person’s [RFC].” Id. at *7. In so doing, the Administration “consider[s] the extent to which the person’s impairment-related symptoms are consistent with the evidence in the record.” Id. at *8. “Consistency and supportability between

- 19 -

reported symptoms and objective medical evidence is key in assessing the RFC."

Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional

> limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," SSR 96-8P, 1996 WL 374184 at *3. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v.

Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ at step three "conclude[d] that [Plaintiff's] physical impairments . . . either singly or in combination, do not meet or equal the severity of any impairment in the Listing of impairments." Tr. at 13. And, as noted previously, the ALJ found "[n]o treating or examining medical source reported findings of [L]isting-level severity, nor did any State agency medical consultant determine that [Plaintiff's] impairments meet the criteria of any [L]isting." Tr. at 13. Although the ALJ did not specifically refer to Listing 11.02, see Tr. at 13, Plaintiff does not now seriously argue she meets or equals this Listing, see Pl.'s Br. at 9, which is understandable, given that it is an "uncommon" occurrence according to SSR 19-4p. In fact, the only treating source to opine on Plaintiff's limitations, Ms. Sitka, did not even cite migraines as the basis for her functioning opinion when asked. Tr. at 607. The ALJ's overall step three findings are supported by substantial evidence.

Moreover, although the ALJ did not specifically refer to SSR 19-4p, the undersigned is convinced that she adequately considered Plaintiff's migraine headaches and treatment modalities and appropriately accounted for them in

the RFC. The ALJ specifically recognized Plaintiff's early reports to the SSA that she suffers from "chronic migraines with nausea," as well as her testimony that "she has nausea from migraines" and she has "migraines two to three [times per] week that sometimes last for hours or days." Tr. at 15. The ALJ also recognized that Plaintiff "has a medical history significant for . . . migraine headaches." Tr. at 15. The ALJ discussed in particular that Plaintiff in March of 2021 saw a neurologist in relation to her complaints about migraine headaches (among other issues) and that "[t]he neurologist noted that there was not much to offer her and no further follow up was scheduled." Tr. at 17 (citations omitted); see Tr. at 328-56, 358-81 (neurology records generally), 329 (example of repeated assessments of "Migraine without aura, with intractable migraine, so stated, with status migrainosus" and note that the neurologist "offered her Topamax but she wanted to wait and watch" and "there is nothing much [the neurologist] can offer her" with no follow up scheduled). The ALJ also noted that Plaintiff "was taking over the counter Tylenol for pain and migraines and an oral iron supplement." Tr. at 18 (citation omitted); see, e.g., Tr. at 708.

Overall, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 19-20. The ALJ's RFC determination

plainly accounts for the migraine allegations that she accepted by limiting Plaintiff to "avoid[ing] concentrated exposure to noise, vibrations, and hazards" and further providing limitations of remembering and carrying out only "simple instructions" and maintaining concentration for two-hour increments. Tr. at 14-15.

As well, the overall RFC finding is supported by substantial evidence. Plaintiff alleges that the ALJ inappropriately drew adverse inferences based on her election not to proceed with surgery and take certain medications, Pl.'s Br. at 19-20, but that is not clear from the ALJ's Decision. To the contrary, the ALJ specifically recognized that Plaintiff "has declined recommended treatment, largely, out of fear of possible side effects and/or complications." Tr. at 19. The ALJ continued that "[i]t is notable that when she did follow prescribed treatment, i.e., HCQ, her inflammatory markers improved." Tr. at 19 (citation omitted). The ALJ also listed daily activities that are inconsistent with Plaintiff's allegations regarding the severity of her symptoms. Tr. at 19. In sum, the ALJ "more than adequately consider[ed Plaintiff's] subjective allegations, but only those allegations that are reasonably supported by the medical evidence of record." Tr. at 19. The ALJ's findings are supported by substantial evidence and need not be disturbed.

## V.    Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 30, 2026.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record